UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. 07-131-06 (JR) |
| v. : | |
| RUBIN BUTLER, : | **FILED** |
| also known as "Buster", : | MAY 2 1 2008 |
| Defendant. : | NANCY MAYER WHITTINGTON, CLERK |
| : | U.S. DISTRICT COURT |

PROFFER OF EVIDENCE

If this case were to go to trial, the government's evidence would establish beyond a reasonable doubt:

1. On or about April 8, 2006, BUTLER used a telephone to have a conversation with James Becton about money that BUTLER owed Becton for selling crack cocaine on consignment from Becton. Specifically, BUTLER told Becton that he had "a hundred and something" dollars on him, and that he still had "one-eighty worth of shit," that is, approximately $180 worth of crack cocaine to sell. Becton then told BUTLER that Becton had heard BUTLER "cranked out yesterday" – that is, sold a large quantity of drugs – but BUTLER claimed he did not and that he had "way more than two hundred [dollars' worth of drugs] left." BUTLER further told Becton that he (BUTLER) did not come out the previous night because of police presence in the area. Becton stated that he believed BUTLER was lying because he (Becton) was out there himself. BUTLER told Becton that he and a co-conspirator named "White Boy" (Tony Hazelton) stayed in the "joint" all last night. BUTLER also told Becton that Da-Da, Son, White-Boy, and Ashley were all at an apartment in the 4200 block of Fourth Street, S.E., specifically 4203 Fourth Street, S.E., Apt. 1, used as a base of operations and to manufacture, package, and distribute drugs. Becton told BUTLER he was about to come around there. (Activation #1026 on (202) 420-

8986).

2. On or about April 8, 2006, BUTLER used a telephone to have a conversation with James Becton. During this call, Becton asked BUTLER where he was at, and BUTLER responded that he was in "the building," referring to an apartment building in the 4200 block of Fourth Street, S.E. Becton then asked BUTLER how much money BUTLER had for Becton from the sale of Becton's crack cocaine. BUTLER replied "one-thirty," meaning $130. Becton then told BUTLER that he (BUTLER) had that same thing last night, and BUTLER said that he did not. Becton then asked BUTLER if BUTLER was trying to have him (Becton) believe that BUTLER had only made crack cocaine sales to two people in the past day. To this, BUTLER explained that there were a "a rack of people" who were taking turns, that is, BUTLER and others were taking turns selling crack cocaine to the customers in the area of the 4200 block of Fourth Street, S.E. Becton asked BUTLER if BUTLER did not have the drug money owed to Becton because BUTLER had been treating females with the money. Later, Becton told BUTLER that he was coming to the Fourth Street area. Becton instructed BUTLER to go around the corner and give the apartment key back to Keith Sampler, whom Becton referred to as "Son." (Activation # 1194 on (202) 420-8986).

3. On or about April 12, 2006, BUTLER used a telephone to have a conversation with James Becton. During this conversation, Becton complained that, for the previous two weeks, BUTLER had been outside selling drugs for Becton but had not made any money. When Becton asked BUTLER, "What's been happening with my motherfuckin' money?," BUTLER claimed that it had been "hot" because "Feds" and "jump outs" had been outside, meaning there had been a law enforcement police presence in the block that prevented BUTLER from making drug sales.

To this, Becton asked BUTLER how BUTLER got himself "in the hole" $150, and Becton told BUTLER to pack his bags and get out of the apartment in the 4200 block of Fourth Street, S.E. (Activation #922 on (202) 292-0713).

    4. On or about April 15, 2006, BUTLER used a telephone to have conversations with James Becton. In the first conversation, BUTLER asked Becton for a "one" quantity of crack cocaine at "cost". Becton responded by telling BUTLER to get him the rest of the money that BUTLER owed Becton for drug sales, to which BUTLER said, "everything I get goes straight to you." In a follow-up conversation two minutes later, BUTLER asked Becton to give him (BUTLER) one of them joints. Becton again asked BUTLER for the money that BUTLER owed him. BUTLER asked, "I owe you 3, right?" Becton corrected BUTLER and said the amount of money owed was $325. BUTLER again assured Becton that "everything I make [from sales of crack cocaine] goes straight to you." (Activation #1726 and #1731 on (202) 292-0713).

    5. On or about April 15, 2006, BUTLER used a telephone to have a conversation with James Becton. During this conversation, BUTLER told Becton that BUTLER had not retrieved a quantity of drugs out of a stash location because Keith Sampler, referred to by BUTLER as "Son", did not want BUTLER to go around there. BUTLER further explained to Becton that he "cranked" all his "joints," meaning BUTLER had sold hand-to-hand all the crack cocaine that he had. Becton then asked BUTLER to explain why, if BUTLER had made so many drug sales, Becton only had $75 from BUTLER. To this, BUTLER explained that certain drug customers owed him money, such as "Grace" and "Aunt Bun." (Activation #2719 on (202) 420-8986).

    6. On or about April 28, 2006, BUTLER used a telephone to have a conversation with James Becton. During this conversation, Becton told BUTLER that Keith Sampler, referred to

3

by Becton as "Son," wanted to know if BUTLER had the money BUTLER owed "Son" for the sale of crack cocaine. BUTLER responded that he did not have "all of it" because BUTLER still had "a lot of shit," meaning that BUTLER still had a quantity of crack cocaine to sell. (Activation #2731 on (202) 292-0713).

7. All of the foregoing telephone calls were in furtherance of, and facilitated, the distribution and possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base, also known as crack cocaine, by BUTLER, Becton, Sampler, and other persons known and unknown. BUTLER agrees and acknowledges that more than 50 grams but less than 150 grams of cocaine base were distributed or possessed with the intent to distribute by BUTLER and other individuals pursuant to jointly undertaken criminal activity that was reasonably foreseeable to BUTLER.

<u>Limited Nature of Proffer</u>

8. This proffer of evidence is not intended to constitute a complete statement of all facts known by RUBIN BUTLER but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for BUTLER 's plea of guilty to the charged crime of Unlawful Use of a Communication Facility, Aiding and Abetting.

9.	RUBIN BUTLER is not cooperating with the Government and this plea is not done pursuant to a "cooperation agreement." RUBIN BUTLER further agrees that he has reviewed all of the allegations in the entire original indictment returned on May 18, 2007, and in the superseding indictment returned on October 17, 2007, in criminal number 07-131, that relate to the other named defendants. BUTLER admits that the allegations are true, or does not have information to dispute or disprove those allegations set forth in the indictment and the superseding indictment in any way.

Respectfully submitted,

JEFFREY A. TAYLOR, Bar No. 498610
United States Attorney

_____
ARVIND K. LAL, Bar Number 389489
MATTHEW P. COHEN, Bar Number 469629
Assistant United States Attorneys
Organized Crime and Narcotics Trafficking Section
555 4th Street, N.W., Room 4217
Washington, DC 20530
(202) 353-8833 (Lal)
(202) 514-7427 (Cohen)

## DEFENDANT'S ACCEPTANCE

I have read the Proffer of Evidence setting forth the facts as to my unlawful use of a communication facility, in violation of Title 21, United States Code, Sections 843(b). I have discussed this proffer fully with my attorney, Thomas Abbenante, Esquire. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 5-21-08

*Rubin Butler*
RUBIN BUTLER
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the government's proffer of evidence as to my client's unlawful use of a communication facility, in violation of Title 21, United States Code, Sections 843(b). I have reviewed the entire proffer with my client, Rubin Butler, and have discussed it with him fully.

Date: 5-21-08

*Thomas Abbenante*
THOMAS ABBENANTE, ESQUIRE
Counsel for Defendant